**David MULLINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9902–CR–81.**

Court of Appeals of Indiana.

Dec. 29, 1999.

Transfer Denied Feb. 22, 2000.

Steven J. Halbert, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-defendant David Mullins appeals his convictions for Forgery,[1] a Class C felony, and Theft,[2] a Class D felony. Specifically, Mullins argues that the State failed to present sufficient evidence to establish proper venue for the forgery conviction or that he committed forgery. Further, he asserts that the trial court improperly admitted the testimony of the victim, Father Glenn O'Connor, in contravention of the clergyman privilege.

### FACTS

The facts most favorable to the judgment reveal that several blank, personal checks were removed from Fr. O'Connor's desk in the rectory at St. Joseph's Catholic Church in Indianapolis. One of the stolen checks, which is the subject of this appeal,

---

1. IND.CODE § 35–43–5–2.  2. I.C. § 35–43–4–2.

was subsequently cashed on January 23, 1998 at Bank One for $300 made payable to Mullins and endorsed on the back in his name. The bank teller required two forms of identification from the payee before cashing the check. The payee provided his identification card and social security card, and the teller recorded the corresponding numbers on the face of the check.

Fr. O'Connor eventually noticed that his bank statement listed checks which he did not recognize. When he attempted to reference his canceled checks in his desk, he realized that they were missing. Fr. O'Connor then went to the bank and obtained copies of the questionable checks. Upon examining them, Fr. O'Connor noticed that the checks were not in his handwriting and his name was even misspelled on one of the checks.

Thereafter, Fr. O'Connor asked Mullins, someone he knew rather well,[3] to come to the rectory. While the two were in the kitchen, Fr. O'Connor confronted Mullins about the checks and "asked him why he did it." Record at 84. Mullins apologized and told Fr. O'Connor that he would try to pay him back. R. at 84. After several deadlines, the latest being April 1, 1998, Mullins failed to pay back any of the money.

On April 17, the State charged Mullins with forgery and two counts of theft. At the conclusion of a bench trial held on October 30, Mullins was acquitted on one count of theft and convicted on the remaining counts. He now appeals.

### DISCUSSION AND DECISION

#### I. Sufficiency of the Evidence

Initially, we note our standard of review. When reviewing a claim of sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Sanders v. State*, 704 N.E.2d 119, 123 (Ind.1999). Rather, we look only to the evidence and the reasonable inferences therefrom that support the judgment. *Id.* If the evidence and inferences provide substantial evidence of probative value to support the judgment, we will affirm. *Id.*

#### A. Venue

Mullins argues that the State presented insufficient evidence that the forgery occurred in Marion County, rather than in Hendricks County. Therefore, he asserts that his forgery conviction must be reversed, as proper venue was not established. However, Mullins does concede that if the State had presented evidence that the crime occurred in Indianapolis, such evidence would be sufficient to prove proper venue.

Mullins has both a constitutional and a statutory right to be tried in the county where the crime was committed. IND. CONST. art. I, § 13; IND.CODE § 35–32–2–1. Proof of proper venue by a preponderance of the evidence is essential to any crime. *See Navaretta v. State*, 699 N.E.2d 1207, 1208 (Ind.Ct.App.1998). The State may establish proper venue by circumstantial evidence. *Id.* 1208–09. Thus, the State meets its burden of establishing venue if the facts and circumstances permit the trier of fact to infer that the crime occurred in the given county. *Norcutt v. State*, 633 N.E.2d 270 (Ind.Ct.App.1994).

In the instant case, Fr. O'Connor testified that the check was taken from his office desk which was located in Indianapolis. Further, the bank teller who cashed the check testified that she worked at the "westside office" on West Washington Street. R. at 89. Finally, the stamp placed on the back of the check by Bank One indicated an Indianapolis address. R. at 97. In light of this evidence and the reasonable inferences therefrom, we find that the State presented sufficient evi-

---

**3.** Fr. O'Connor had helped Mullins through a difficult period in his life. Mullins was also studying to become a member of the Roman Catholic faith.

dence that the forgery took place in Marion County.

### B. Forgery Conviction

Mullins also argues that the State failed to present sufficient evidence to support his forgery conviction. Specifically, he contends that his alleged apology was simply for taking the check and not an admission that he either forged the stolen check or cashed it with knowledge of the forgery. Further, he challenges the weight of the bank teller's testimony, as she was allegedly unable to identify Mullins as the individual who negotiated the check.

■ I.C. § 35–43–5–2 provides that a defendant commits forgery when, with intent to defraud, he, inter alia, utters a written instrument in such a manner that it purports to have been made by another person. Here, the stolen check was made payable to Mullins, with his name endorsed on the back. Moreover, because Mullins did not have an account with Bank One, the bank teller required two pieces of identification before she would cash the check. An identification card and a social security card were subsequently provided to the teller, and she recorded the numbers on the face of the check. Finally, most notably, when Fr. O'Connor confronted Mullins, he apologized and agreed to repay him. Thus, the State presented sufficient evidence from which the trier of fact could infer that Mullins forged the stolen check. We decline Mullins' invitation to reweigh the evidence.

### II. Privileged Communication

Mullins' final argument is that Fr. O'Connor's testimony regarding Mullins' apology was erroneously admitted into evidence by the trial court. Specifically, he notes that the Catholic faith recognizes the sanctity of confession. Therefore, he asserts that such a "confession" was a privileged communication to a clergyman pursuant to IND.CODE § 34–46–3–1.

■ I.C. § 34–46–3–1 provides in pertinent part as follows:

Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications:

. . . .

(3) Clergymen, as to the following confessions, admissions, or confidential communications:

(A) Confessions or admissions made to a clergyman in the course of discipline enjoined by the clergyman's church.

(B) A confidential communication made to a clergyman in the clergyman's professional character as a spiritual adviser or counselor.

Because this privilege is derived from a statute, it must be strictly construed. *See Ley v. Blose*, 698 N.E.2d 381, 383 (Ind.Ct. App.1998).

■ We would agree that the Catholic sacrament of reconciliation clearly falls within the strictures of the statute as confessions made to a clergyman in the course of discipline enjoined by the clergyman's church. However, one need not be well versed in the Catechism to recognize that Mullins' apology did not fall within the sanctity of confession.[4] Here, only when confronted by the victim, who just happened to be a priest, Mullins apologized and promised to repay Fr. O'Connor. Further, this confrontation occurred in Fr. O'Connor's kitchen after he had specifically requested Mullins' presence. In light of these circumstances, we find no error.

---

4. We note that Mullins does not argue that this was a confidential communication made to Fr. O'Connor in his professional character as a spiritual advisor or counselor. Furthermore, nothing in the conversation between Fr. O'Connor and Mullins indicates that Mullins expected any confidentiality or that he was seeking advice or counseling from Fr. O'Connor in his priestly capacity.

CONCLUSION

In summary, we hold that the State presented sufficient evidence that the forgery occurred in Marion County and that Mullins committed forgery. Further, we find that the trial court did not err in admitting Fr. O'Connor's testimony regarding his conversation with Mullins, as this was not a privileged communication under I.C. § 34–46–3–1.

Judgment affirmed.

SULLIVAN, J., and STATON, J., concur.